## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.:     22-1220

RON BUNNELL, on behalf of the ESTATE OF CARL JOSEPH BUNNELL, deceased, and
BARCLAY BUNNELL, individually,

      Plaintiffs,

v.

FUTURE MOTION, INC.,

      Defendant.

---

## ORIGINAL COMPLAINT

---

Plaintiffs, Ron Bunnell, on behalf of the Estate of Carl Joseph Bunnell and Barclay Bunnell (collectively "Plaintiffs"), complain and allege against Defendant Future Motion, Inc. as follows:

## NATURE OF ACTION

1.    This is a wrongful death products liability case arising out of the severe personal injuries and death of Mr. Carl Joseph Bunnell ("J. Bunnell") as a result of serious defects and negligence caused by Defendant Future Motion, Inc.'s ("FM" or "Defendant FM") product, the "Onewheel," a one-wheeled self-balancing electric transporter manufactured and marketed by FM, which ultimately caused Decedent's injuries and death.

## PARTIES

2.    The Plaintiffs in this matter are Barclay Bunnell ("B. Bunnell"), individually, and Ron Bunnell, on behalf of the Estate of Carl Bunnell. The Plaintiffs in this matter will be referred to collectively hereinafter as "Plaintiffs."

3.      Plaintiffs file this action for wrongful death of Decedent, Carl Joseph Bunnell ("J. Bunnell" or "Decedent") who died from complications arising out of injuries he sustained while riding Defendant FM's Onewheel product as described below on December 2, 2021.

4.      FM is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in the State of California.  It may be served with process through its agent for service of process, Paracorp Incorporated, 2804 Gateway Oaks Dr. #100, Sacramento, CA 95833.

5.      Defendant FM's founder and current CEO, Kyle Doerksen, founded Defendant FM and designed FM's Onewheel Product in California's Silicon Valley.

6.      On information and belief, Plaintiffs allege that the majority of Defendant FM's Executive Team, including the CEO, Kyle Doerksen, as well as its Chief Technology Officer and its Chief Marketing Officer, all live in, or reside near, Santa Cruz County, California.

7.      At all times hereinafter mentioned, Defendant FM was, and still is, a digital vehicle company involved in research, development, testing, manufacture, production, promotion, distribution, and marketing of Onewheel for distribution, sale, and use by the general public, throughout the United States and the State of Colorado.

## VENUE AND JURISDICTION

8.      Mr. B. Bunnell is an individual, and at all relevant times, a resident of Colorado.

9.      Mr. J. Bunnell was an individual that at all relevant times was a resident of Colorado.  Therefore, Ron Bunnell, as representative of the Estate of Carl Bunnell, is deemed a citizen of Colorado for purposes of this lawsuit. *See* 28 U.S.C. § 1332(c)(2).

10.     Defendant FM has purposefully availed itself of the benefits and protections of the laws within the State of Colorado.  Defendant FM has had sufficient contact such that the exercise of jurisdiction would be consistent with the traditional notions of fair play and substantial justice.

11.     This Court has diversity jurisdiction under 28 U.S.C. § 1332 because Plaintiffs are residents of Colorado, and Defendant's principal place of business is in California, and the amount in controversy exceeds $75,000.

12.     Venue is proper because a substantial part of the events giving rise to Plaintiffs' claims occurred in the District of Colorado. 28 U.S.C. § 1391(b)(2).

## GENERAL ALLEGATIONS

13.     FM's product "Onewheel" is a self-balancing, battery-powered, one-wheel electric transport that is often described as an electric skateboard.  The product was and is advertised, analyzed, assembled, compounded, designed, developed, distributed, formulated, inspected, labeled, manufactured, marketed, packed, produced, promoted, processed, researched, sold, and tested by FM.  Upon information and belief, FM developed, designed and manufactured not only the Onewheel product line, but all the subsystems that power it, including motors, power electronics, battery unit, battery management system, controller unit or circuit board, and smartphone applications ("apps").

14.      Upon information and belief, operation of FM's Onewheel is, or may be, controlled and/or monitored, in part, by an "app" installed on users' smartphones.  The Onewheel app allows users to view their total miles, battery life, speed, and other information.  The speed indicator of the Onewheel app is similar to a speedometer in a car.  It lists the maximum speed as 26.1 miles per hour, even though the published maximum speed for the Onewheel is far less—approximately 19 miles per hour.

3

15.     FM promotes itself as being "IN THE BUSINESS OF MAKING THE FUTURE 'RAD'." (Https://onewheel.com/pages/about-us.)  According to FM's website, the Onewheel is designed to make the rider forget that "there are thousands of calculations happening per second to keep you perfect."  FM claims that the Onewheel can "really reignite the childhood" inside of riders.  Videos on Onewheel's website depict users riding the Onewheel device in a variety of settings — in concrete drainage basins, through standing water, on the open highway (with cars approaching), on dirt paths, on the beach, through wooded areas, across fallen logs, and on and off the sidewalk.  Onewheel-sponsored videos show users riding a Onewheel with and without helmets.

16.     Upon information and belief, one of Onewheel's key features (and its most dangerous and unpredictable feature) is that it will allegedly provide the rider with "pushback" when approaching the device's limits during use.  Often however, instead of, or in addition to, such "pushback" (which is allegedly designed as a warning to riders to avoid a dangerous situation), the Onewheel will simply shut off and cause the board to unbalance and "nosedive" forward, often resulting in the rider being thrown off the device.  The harder the device works to maintain operations, the less the Onewheel is able to assist the rider in balancing.  Once the motor's resources reach a critical point, the motor's normal ability to help the rider balance disappears, and the rider experiences an unexpected violent nosedive.  Often, this will feel to the rider like the motor suddenly cut out or shut down.  Different factors create a variability as to when and what will cause the Onewheel to shutdown and nosedive, including the rider's weight, tire pressure, wind direction, rider's stance, battery level, grade of incline or decline, and other factors known and unknown.  Thus, predicting exactly when or what will cause a nosedive is impossible.

17.     Upon information and belief, the leading cause of "pushback" nosediving is

velocity. When experiencing velocity pushback, the rider will purportedly feel the nose of the board rise to various degrees when a certain velocity is reached. Often, velocity pushback occurs at a speed lower than that of the maximum due to the above-mentioned factors.

18.     Upon information and belief, nosedives also occur when ascending or descending hills, purportedly to alert the rider, again, that the motor and/or the battery unit may be becoming overworked. The problem when this nosedive occurs, however, is that it is difficult to discern when the rider is feeling pushback, or whether it is the natural resistance caused by the incline/decline. While ascending hills, riders are already pressing against the nose and the grade of the hill to ascend, and therefore may not be able to discern pushback as pushback. While descending, a rider may not feel pushback because his/her weight is likely already on the tail to control speed. The absence of pushback in such situations will likely result in a sudden nosedive or shut-off, especially if the rider is unaware that the board is giving them pushback. Again, the result will be that the rider feels the board suddenly shut down during operation resulting in violently throwing the rider forward and down off the board.

19.     Upon information and belief, another instance when a board nosedive occurs when the Onewheel is nearing battery depletion. When the Onewheel purportedly senses the battery unit is about to be damaged by over-depletion, the board will shut off entirely, leaving the rider left to suddenly and unexpectedly recalibrate his/her balance, often resulting in the rider being thrown off the board.

20.     Upon information and belief, yet another form of pushback is referred to as regeneration pushback. One way that the Onewheel recharges its battery is to collect kinetic energy when traveling down a decline to reserve such power in the battery. However, this may result in the battery becoming overcharged, which may damage the battery. Upon information and

belief, FM "addressed" this problem by designing the board to suddenly and unexpectedly shut down in order to prevent battery damage, at the expense of rider safety. Instead of having the battery reach overcharge, prior to regeneration-related damage to the battery, the Onewheel will shut down and violently throw the rider forward and down off the board. The same problems in discerning pushback while ascending/descending also occur in this situation.

21.     Upon information and belief, another common cause of nosedives is due to acceleration. If a rider attempts to accelerate quickly, the motor may not support the sudden weight and force on it and the nose will suddenly drop. Yet, one of the features of the Onewheel is its ability to accelerate quickly, even from a complete stop. Such acceleration nosedives can happen at any speed, even from a dead stop, and the rider will feel as though the motor has suddenly cut out or shut off. Tail-slides occur when the rider shifts his/her weight onto the back of the board and thereby overwhelms the motor. In that case, the tail of the board will suddenly drop and slide on the ground, causing the rider to become instantly unbalanced.

22.     Upon information and belief, not only is it prohibitively difficult to determine when nosedives/ shut-offs will occur, but the result of such unexpected, unpredictable and undiscernible events almost invariably cause the rider to be ejected or fall from the board, resulting in severe injuries or death. A Onewheel nosedive or shut-off is not a small event as it might be with any other type of vehicle. The front of the board violently slams into the ground and then the rider is inevitably thrown downward and forward, often leading with their heads.

23.     The seriousness and unpredictability of the latent defects described above render the Onewheel a prohibitively dangerous device. Experienced Onewheel riders have said that such failures can "strike at anytime" and that it is a "big fear" when riding the device. Many riders do not know how to recognize and react to "pushback," which is the only "warning" in place to notify

6

riders of an impending nosedive.  Riders say they fall because they do not know what pushback is or what it feels like.  Many other riders insist they never felt any pushback at all before the motor just "cuts off" and stops, no matter the speed at which the rider is traveling.  There exist no warning lights, vibrations, or sounds to alert a rider that a nosedive is imminent, and although the device connects to the rider's smartphone with an arguably sophisticated "app," the app provides no ability for the rider to be warned of a dangerous operating condition—no buzzes, vibrations, alarms, or other alerts are offered.  Onewheel riders say that "[a] lot of people just jump to conclusions that it's all the rider's fault," but the fact is that nosedives have been a flaw since day one.  Other riders wonder "[w]hy can't there be an audible alarm accompanied by the 'pushback?' and that the "flaw should have been addressed a LONG TIME ago!"  Another unofficial Onewheel spokesperson describes the vehicle as "one wheel against anything that can go wrong."  "If people want ripped tendons, let's give them ripped tendons."

## PLAINTIFFS' INJURIES

24.     Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

25.     On or about December 2, 2021, J. Bunnell was riding his Onewheel board from his home in Red Canyon, Colorado to Eagle Valley High School.  At that time, J. Bunnell, was accompanied by his son, Plaintiff B. Bunnell, each riding their own Onewheel devices.  During this ride, B. Bunnell and J. Bunnell were facing each other, riding parallel.

26.     Upon information and belief, J. Bunnell was riding the Onewheel on a flat, smooth, asphalt-paved sidewalk imposing no obstructions or imperfections of any kind.  Further, upon information and belief, J. Bunnell's Onewheel device suddenly shutoff and "nosedived" while he was riding on the sidewalk, causing the front of the board to violently and unexpectedly slam into

the pavement, throwing him forward from the board.  Plaintiff, B. Bunnell, witnessed the nosedive

and subsequent aftermath.  As a result of being unexpectedly thrown off of the Onewheel device,

J. Bunnell was knocked unconscious, suffering severe head and brain trauma as a result of being

ejected from the Onewheel.

27.     Shortly  thereafter,  police  and  paramedics  arrived  on  scene  and  J.  Bunnell

temporarily regained consciousness.  A short time after returning to their residence, J. Bunnell's

condition  worsened  significantly.   Paramedics  were  called,  and  J.  Bunnell  was  rushed  to  Vail

Health Hospital in Vail, Colorado.

28.     Upon information and belief, J. Bunnell remained at Vail Health Hospital for less

than an hour before he was air lifted to Denver Health Trauma Center in Denver Colorado.   J.

Bunnell underwent surgery, but his condition did not improve.  He ultimately succumbed to the

severe head and brain injuries caused by his unexpected ejection from the Onewheel device.

## CAUSES OF ACTION

29.     Plaintiffs reallege and incorporate by reference all the foregoing allegations as if

repeated in full here.

## First Cause of Action
(Negligence)

30.     Plaintiffs reallege and incorporate by reference all the foregoing allegations as if

repeated in full here.

31.     Defendant  FM  owed  Plaintiffs  and  the  consumer  public  a  duty  of  due  care  in

designing, manufacturing, marketing, selling, and distributing the Onewheel device used by Mr.

J. Bunnell such that the device could be operated in a normal, safe, and non-dangerous manner.

32.     Defendant breached its duties to Plaintiffs by failing to exercise ordinary care and

due  diligence  in  negligently  designing,  manufacturing,  marketing,  selling,  and  distributing  the

8

Onewheel device used by Mr. J. Bunnell such that the device could not be operated in a normal, safe, and non-dangerous manner and proximately caused Decedent's injuries.  Defendant's activities contributed in natural and/or continuous sequence to the Decedent's severe injuries, and its actions, as alleged herein, were a substantial contributing factor to Decedent's injuries.  At all times mentioned herein, Defendant, through its negligence as alleged herein, ignored its responsibilities to Plaintiffs and unreasonably jeopardized the health and well-being of the Decedent and caused his injuries.

33.    Defendant's negligence, as alleged herein, was a substantial factor in causing Decedent's injuries, and Plaintiffs are entitled to recover compensatory damages in an amount according to proof.  Plaintiffs have been generally damaged in an amount within the jurisdictional limits of this court.

34.    The Defendant is liable to the Plaintiffs for all general, special and punitive damages, as well as delay damages, and other relief to which they are entitled to by law.

## Second Cause of Action
(Strict Liability)

35.    Plaintiffs reallege and incorporate by reference all the foregoing allegations as if repeated in full here.

36.    Defendant FM is the designer, manufacturer, and/or marketer/seller of the Onewheel device and each is strictly liable to Plaintiffs for designing, creating, manufacturing, marketing, labeling, distributing, selling, and placing into the stream of commerce the product Onewheel.

37.    The Onewheel device that was designed, manufactured, distributed and/or sold by Defendant was defective in design or construction in that when it left the hands of the Defendant,

it was unreasonably dangerous.  It was more dangerous than an ordinary consumer would expect and more dangerous than other similar devices.

38.    The Onewheel device that was designed, manufactured, distributed and/or sold by Defendant was defective due to its unreasonably dangerous and unpredictable propensity to shut-off suddenly, and/or nosedive, while in operation, without warning, as described above, and because it contained inadequate warnings or instructions because the manufacturer, supplier and/or distributor knew or should have known that the product was intrinsically defective and that users were likely to suffer severe injury and/or death while using the Onewheel.

39.    The Onewheel device that was designed, manufactured, marketed, and/or sold by Defendant was defective due to inadequate testing.

40.    The Onewheel device that was designed, manufactured, marketed, and/or sold by Defendant was defective due to Defendant's failure to provide adequate warnings and instructions after the Defendant knew or should have known of the increased risk of severe injury and/or death from using the Onewheel.

41.    The Onewheel device involved in the subject incident did not perform as safely as an ordinary consumer would have expected it to perform when used or misused in an intended or reasonably foreseeable way.

42.    The Onewheel device involved in the subject incident was defective in its design because the benefits of the Onewheel's design failed to outweigh the risks of the Onewheel's design in the following manner:

   a)  The gravity of the potential harm resulting from the use, or foreseeable misuse, of the Onewheel was enormous as evidenced by Mr. J. Bunnell's injuries;

   b)  There existed a high likelihood that severe harm would occur from a sudden and unexpected nosedive of the Onewheel at a speed exceeding 15 mph that would cause its rider to be thrown forward and down to the ground headfirst;

c)  At the time of the Onewheel's manufacture, there existed numerous and inexpensive alternative safer designs with few or no disadvantages to the existing design.

43.     The Onewheel device involved in the subject incident contained a manufacturing defect in that the subject Onewheel differed from the manufacturer's design or specifications or from other typical units of the same product line when it left the possession of Defendant.

44.     Defendant's designing, manufacturing, marketing, and/or selling the defective Onewheel device as alleged herein and placing it in the stream of commerce, as alleged herein, was a substantial factor in causing Decedent's injuries, and Plaintiffs are entitled to recover compensatory damages in an amount according to proof.  Plaintiffs have been generally damaged in an amount within the jurisdictional limits of this court.

45.     Defendant is liable to the Plaintiffs for all general, special and punitive damages, as well as delay damages, and other relief to which they are entitled to by law.

<u>**Third Cause of Action**</u>
(Failure to Warn)

46.     Plaintiffs reallege and incorporate by reference all the foregoing allegations as if repeated in full here.

47.     At all times herein mentioned, the subject Onewheel was unsafe for use by consumers, including Mr. J. Bunnell, and Defendant knew or should have known that said product was unsafe and could cause severe and even fatal injuries during its "normal" operation, as alleged herein; yet Defendant failed to adequately warn users of the risk of serious injury or death.

48.     Mr. J. Bunnell used the Onewheel device in the manner in which Defendant intended it to be used.

49.    Defendant FM promoted and sold the Onewheel device on the open market with the knowledge of the device's unreasonable risk to the public in general and specifically to Decedent.

50.    The Onewheel, as used by Mr. J. Bunnell, was defective and unreasonably dangerous when sold by Defendant, who are liable for the injuries arising from the Onewheel's design, manufacture, marketing, sale, and use without adequate warning of the device's serious dangers.

51.    The Onewheel, as used by Mr. J. Bunnell, had potential risks that were known or knowable by Defendant in light of the scientific knowledge that was generally accepted in the scientific community at the time of the Onewheel's manufacture, distribution or sale.

52.    The potential risks of the Onewheel, including but not limited to its propensity to nosedive suddenly and without warning under various conditions presented a substantial danger when the Onewheel was used or misused in an intended or reasonably foreseeable way.

53.    Ordinary consumers would not have recognized the potential risks of the Onewheel, including but not limited to its propensity to nosedive suddenly and without warning under various conditions.

54.    Defendant failed to adequately warn or instruct of the above-described potential risks of the Onewheel, including but not limited to its propensity to nosedive suddenly and without warning under various conditions.

55.    Defendant further breached its duty to provide timely and adequate warnings, instructions, and information, at least in the following particulars:

      a)    failing to ensure Onewheel warnings were accurate, conspicuous and adequate despite having extensive knowledge of the risks associated with Onewheel use;

b)      failing to conduct adequate pre- and post-market safety surveillance and testing such that adequate warning could have been issued to users;

c)      failing to include adequate conspicuous warnings that would alert users to the dangerous risks of the Onewheel, including but not limited to, among other things, sudden and unexpected nose dives; and

d)      representing that Onewheel was safe for use, when in fact, Defendant knew or should have known that Onewheel was unsafe for this use and that it was actually unreasonably dangerous to use when operated as intended by Defendant.

56.     Defendant continued to aggressively manufacture, market, promote, distribute, and sell the Onewheel, even after it knew or should have known of the unreasonable risks of serious injury or death caused by use of the Onewheel.  The lack of sufficient instructions and/or warnings was a substantial factor in causing Decedent's death in that Defendant's designing, manufacturing, marketing, and/or selling the Onewheel device and placing it in the stream of commerce without adequate warnings of the risk of serious injury or death, as alleged herein, caused Mr. J. Bunnell's severe injuries; and Plaintiffs are entitled to recover compensatory damages in an amount according to proof.  Plaintiffs have been generally damaged in an amount within the jurisdictional limits of this court.

57.     For the reasons described hereinabove, Defendant is liable to the Plaintiffs for all general, special and punitive damages, as well as delay damages, and other relief to which Plaintiffs are entitled to by law.

## Fourth Cause of Action
(Negligent Design)

58.     Plaintiffs reallege and incorporate by reference all the foregoing allegations as if repeated in full here.

59.     Defendant FM was the designer, manufacturer, seller, distributor, marketer and/or seller of Onewheel, which was negligently designed.

60.     Defendant was negligent in developing, designing, processing, manufacturing, inspecting, testing, packaging, selling, distributing, supplying, marketing, and promoting Onewheel, which was defective and presented an unreasonable risk of harm to consumers. Onewheel was negligently designed in ways that include, but are not limited to, one or more of the following:

(a)     When placed in the stream of commerce, Onewheel suffered from unreasonably dangerous design defects and was not reasonably safe and fit for its intended or reasonably foreseeable purpose or as intended to be used, thereby subjecting users, including Mr. J. Bunnell, to unreasonable risks of serious injury or death.

(b)     Onewheel was insufficiently tested.

(c)     Onewheel causes serious injury and/or death that outweighs any potential utility.

(d)     Onewheel was not accompanied by adequate labeling, instructions for use and/or warnings to fully apprise the users, including Mr. J. Bunnell, of the potential risks of serious injury and/or death associated with its use.

(e)     In light of the potential and actual risk of harm associated with Onewheel's use, a reasonable person who had actual knowledge of this potential and actual risk of harm and/or death would have concluded that Onewheel should not have been marketed in that condition.

(f)     Defendant was under a duty of due care to act for the protection of consumers, such as Decedent. The Defendant owed a duty to consumers to exercise reasonable care in developing, designing, processing, manufacturing, inspecting, testing, packaging, selling distributing, supplying, marketing, and promoting Onewheel, and Defendant breached that duty by the conduct as alleged herein.

14

(g)     Defendant knew or should have known that use of Onewheel as intended imposed unreasonable risks to the health and safety of consumers.  Defendant knew of the grave risks caused by its product from investigation and testing performed by themselves or others or, to the extent Defendant did not fully know of those risks, it was because Defendant unreasonably failed to perform appropriate, adequate and proper investigations and tests that would have disclosed those risks.

(h)     Defendant's conduct described above was grossly negligent in that its actions and omissions involved willful and reckless conduct and were carried out with conscious disregard for the unreasonable risk of Onewheel and its potential harm to consumers.

61.     Defendant's negligent designing, manufacturing, marketing, and/or selling the Onewheel device and placing it in the stream of commerce without adequate warnings of the risk of serious injury or death, as alleged herein, were substantial factors in bringing about harm to Decedent herein in that Mr. J. Bunnell sustained severe injuries when his Onewheel suddenly and unexpectedly nosedived; and Plaintiffs are entitled to recover compensatory damages in an amount according to proof.  Plaintiffs have been generally damaged in an amount within the jurisdictional limits of this court.

62.     Defendant is liable to the Plaintiffs for all general, special and punitive damages, as well as delay damages, and other relief to which Plaintiffs are entitled to by law.

## Fifth Cause of Action
(Negligent Recall/Retrofit)

63.     Plaintiffs reallege and incorporate by reference all the foregoing allegations as if repeated in full here.

64.     Defendant FM was the designer, manufacturer, seller, distributor, marketer and/or seller of Onewheel, which was negligently designed.

65.     Defendant knew, or reasonably should have known, that the Onewheel was dangerous or was likely to be dangerous when used in a reasonably foreseeable manner.

66.     Defendant became aware of this defect before or after the Onewheel was sold.

67. After Defendant learned that the Onewheel was dangerous or was likely to be dangerous when used in a reasonably foreseeable manner, Defendant failed to recall or retrofit or warn of the danger of the Onewheel.

68. Plaintiffs contend and hereupon alleged that a reasonable manufacturer, distributor or seller under the same or similar circumstances would have recalled or retrofitted or provided adequate warnings about the Onewheel.

69. Defendant's failure to recall, to retrofit or to provide adequate warnings about the Onewheel's dangerous propensities under foreseeable use were substantial factors in causing Decedent's death.

**Sixth Cause of Action**
(Violations of the Consumer Protection Act—
Colorado Revised Statute § 6-1-105)

70. Plaintiffs reallege and incorporate by reference all the foregoing allegations as if repeated in full here.

71. Plaintiffs are informed and believe and thereon allege that Defendant, by the acts and misconduct alleged herein, violated the Consumer Protection act, Colorado Revised Statute § 6-1-105.

72. Colorado Revised Statute § 6-1-105(1) provides that unfair and/or deceptive trade practices shall mean and include "knowingly or recklessly engag[ing] in any unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent act or practice," and/or represents "that goods, food, services, or property are of a particular standard, quality, or grade, or that goods of a particular style or model, if he knows or should know that they are of another."

73. The acts and practices described in the preceding paragraphs were and are likely to mislead the general public and, therefore, constitute unfair and/or deceptive practices within the

meaning of Colorado Revised Statute § 6-1-105.  The acts of untrue and misleading advertising set forth in the preceding paragraphs are incorporated by reference and are, by definition, violations of Colorado Revised Statute § 6-1-105.  This conduct includes, but is not limited to:

(a)     Representing to Decedent and the general public that Onewheel was safe for ordinary use, knowing that these representations were false, and concealing from Plaintiffs and the general public that Onewheel had a serious propensity to cause serious or even fatal injuries during normal operation;

(b)     Engaging in advertising programs designed to create the image, impression and belief by consumers, including Decedent, that Onewheel was safe for ordinary, recreational use, even though Defendant knew that to be false, and even though Defendant had no reasonable grounds to believe that to be true; and

(c)     Purposely downplaying and understating the safety hazards and risks associated with Onewheel use.

74.     These practices constitute unlawful, unfair, deceptive, untrue and misleading advertising as prohibited by Colorado Revised Statute § 6-1-105.

75.     The unlawful, unfair and fraudulent business practices of Defendant described above present a continuing threat to members of the public in that Defendant continue to engage in the conduct described therein.

76.     As a result of the conduct described above, Defendant has been and will be unjustly enriched.  Specifically, Defendant has been unjustly enriched by receipt of millions of dollars in ill-gotten gains from the sale of Onewheel in Colorado and throughout the United States, sold in large part as a result of the acts and omissions described herein.

77.     Because of the fraudulent misrepresentations made by Defendant, as detailed above, and the inherently unfair practice of committing a fraud against the public by intentionally misrepresenting and concealing material information, the acts of Defendant described herein constitute unfair or fraudulent business practices.

17

## **PUNITIVE DAMAGES ALLEGATION**

78.    Plaintiffs reallege and incorporate by reference all the foregoing allegations as if repeated in full here.

79.    Plaintiffs are entitled to punitive damages because Defendant FM failed to warn and other actions as described herein were malicious, wanton, willful or oppressive or were done with reckless indifference to the Plaintiffs and the public's safety and welfare.  Defendant misled Onewheel users and purchasers, as well as the public at large, including Plaintiffs herein, by making false representations about the safety and risks associated with its product.  Defendant downplayed, understated and/or disregarded its knowledge of the serious and potentially deadly risks associated with the foreseeable use of its product.

80.    Defendant was, or should have been, in possession of evidence demonstrating the serious risk of injury or death associated with Onewheel.  Nonetheless, Defendant continued to market the product by providing false and misleading information, or by omitting to disclose vital information, including but not limited to, the Onewheel's propensity to suddenly and unexpectedly nosedive without prior warning under various conditions.

81.    At the time the Onewheel involved in the subject incident was designed, manufactured, or sold to Plaintiffs, Onewheel was aware of safer practical and inexpensive alternate designs for the Onewheel that could have either prevented the above-described nosedive under certain conditions or in the event of a nosedive, could have mitigated the risk of rider ejection from the Onewheel.  Despite this knowledge, Defendant consciously and purposefully decided against the above-described measures and chose to gamble with the safety of the public.  In addition, once Defendant became aware of the inherent dangers of the Onewheel and learned of safer practical and inexpensive alternate designs for the Onewheel, Defendant failed to recall and

18

to retrofit the Onewheel with these safer alternate designs or to adequately warn the public about the Onewheel's propensity to suddenly and unexpectedly nosedive without prior warning under various conditions.

82.    Defendant's actions described above were performed willfully, intentionally and with a conscious disregard for the rights of Plaintiffs and the public.

83.    Accordingly, Plaintiffs seek and are entitled to punitive damages in an amount to be determined at trial.

## PRAYER

WHEREFORE, Plaintiffs pray for judgment against Defendant FUTURE MOTION, INC., and as appropriate for each cause of action alleged and as appropriate to the particular standing of Plaintiffs as follows:

1.    Past and future general damages, the exact amount of which has yet to be ascertained, in an amount which will conform to proof at time of trial;

2.    Past and future economic and special damages according to proof at the time of trial;

3.    Loss of earning and impaired earning capacity according to proof at the time of trial

4.    Medical expenses, past and future, according to proof at the time of trial;

5.    For past and future mental and emotional distress, according to proof at the time of trial;

6.    Pain and suffering;

7.    Loss of consortium and/or loss of companionship;

8.    Punitive or exemplary damages according to proof at the time of trial;

9.    Restitution, disgorgement of profits, and other equitable relief;

10.    Injunctive relief;

11.   Attorneys' fees;

12.   For costs of suit incurred herein;

13.   For pre- and post-judgment interest as provided by law; and,

14.   For such other and further relief, whether in equity or at law, as the Court may deem just and proper.

Dated:  May 17, 2022                    Respectfully submitted,

                                        **BAILEY COWAN HECKAMAN PLLC**


                                        By:    _/s/_ Robert W. Cowan
                                               Robert W. Cowan
                                               Texas Bar No. 24031976
                                               Aaron M. Heckaman
                                               Texas Bar No. 24059920
                                               *Pro hac vice admission to be requested*
                                               Four Oaks Place
                                               1360 Post Oak Blvd., Suite 2300
                                               Houston, Texas 77056
                                               Phone:    713.425.5244
                                               Fax:      713.425.7101
                                               rcowan@bchlaw.com
                                               aheckaman@bchlaw.com

                                               ***Counsel for Plaintiffs***